UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LEWIS & KENNEDY, INC.,

          Plaintiff,

          -against-

PERMANENT MISSION OF THE REPUBLIC OF
BOTSWANA TO THE UNITED NATIONS and
OVE ARUP & PARTNERS CONSULTING
ENGINEERS P.C.,

          Defendant.
------------------------------------------------------------------------x

05 Civ. 2591 (HB)

**OPINION & ORDER**

**Hon. HAROLD BAER, JR., District Judge[*]:**

Plaintiff, Lewis & Kennedy, Inc. ("Lewis"), filed this instant Complaint for breach of contract against the Permanent Mission of the Republic of Botswana to the United Nations ("the Mission") and Ove Arup & Partners Consulting Engineers, P.C. ("Ove Arup"). The Mission moves to dismiss (1) on the grounds that Lewis failed to properly effectuate service in accordance with the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608 and (2) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Ove Arup does not oppose this motion. (Aff. of Alfred Lyons, Principle of Ove Arup). The matter was sub judice following oral argument on July 8, 2005. For the foregoing reasons, the Mission's motion to dismiss for improper service is GRANTED in-part and the motion to dismiss pursuant to Rule 12(b)(6) is DENIED.

### I.     BACKGROUND

**A. Factual Background**

In February 2003, the Mission hired Lewis, a general contractor, to "perform work and labor and provide materials" for renovations to the home of the Permanent Mission of Botswana, located at 154-156 West 46th Street in New York City, and Ove Arup to serve as its representative for the project. (Compl. ¶ 4.) The agreement between the parties had an estimated base cost of $3,859,088.70. (Compl. ¶ 5.) According to Lewis, during construction,

---

[*] Margaret Johnson, a Summer 2005 intern in my Chambers, and currently a second year law student at New York University School of Law, provided substantial assistance in the research and drafting of the Opinion.

- 1 -

which lasted from March 2003 to April 2004, certain changes were made to the scope of work and recorded in Change Orders, which were approved by the Mission and Ove Arup. (Compl. ¶¶ 8-10.) The Change Orders allegedly increased the cost of the project by $641,985 and the final cost to $4,521,672.66. (Compl. ¶ 10.) To date, Lewis has allegedly been paid $3,744,870.42. (Compl. ¶ 13.) The focus of this dispute is the remaining $776.802.24. (Compl. ¶ 14.)

**B. Procedural History**

1. Attempts at Service in 2004

On or about December 8, 2004, Lewis filed suit for breach of contract in New York Supreme Court against the Mission and Ove Arup. (Pl.'s Mem. in Opp'n to Mot. to Dismiss, ¶ 3.) Lewis, by and through a process server, Julio De Lara ("Process Server") attempted to serve the Summons and Complaint on the Mission on December 14 and 15, 2004. (Aff. of Serv. by Julio De Lara, Dec. 17, 2004) (herein "Aff. of Service").[1] According to a signed affidavit of the Process Server, on both occasions, he was told that "they would not accept service" and to "go away." (Aff. of Service.) According to Lewis, on December 16, 2004, the Complaint was also served on the Mission, yet the method of service is unclear. On the one hand, in Lewis' opposition to the motion to dismiss, Lewis states that the Process Server "affixed the summons and complaint to the door" of the Mission and completed service on December 17 when the Summons and Complaint were mailed via regular mail to Ambassador Alfred Mataye Dube ("Ambassador Dube") (Aff. of Service), and Lewis subsequently filed with the New York State Supreme Court an Affidavit of Service. (Not. of Removal, Robert Van Lierop, Att'y for Def.) On the other hand, the Process Server's affidavit indicates that the papers were delivered by hand directly to "Jane Smith" at the Mission. (Aff. of Service).

2. Attempts at Service in 2005

In addition to the attempts to serve the Mission in 2004, on February 14, 2005, Lewis allegedly delivered two copies of the Summons and Complaint to the New York County Clerk's Office with a certified mailing envelope that the Clerk mailed to the Mission. (Pl. Mem. in Opp'n to Def.'s Mot. to Dismiss, ¶5) ("the February 14 mailing".) However, Lewis fails to indicate to whom the envelope was addressed. Following the February 14 mailing, Lewis allegedly delivered a second amended Summons, Complaint and Notice of Suit to the County

---

[1] In the absence of any affidavits or affirmations other than De Lara's affidavit, the Court must rely on Lewis' memorandum in opposition to the motion to dismiss.

Clerk's Office sometime in March 2005, but again fails to indicate to whom service was addressed. (Pl. Mem. in Opp'n to Def.'s Mot. to Dismiss, ¶12) ("the March mailing".) Lewis also maintains that Plaintiff intended to deliver a third copy of the Summons, Complaint, and Notice of Suit to Ambassador Dube sometime in April via certified mail. (Pl. Mem. in Opp'n to Def.'s Mot. to Dismiss, ¶14) ("the April mailing".) However, Lewis does not allege that this attempt was conducted through the County Clerk's Office and no proof of service was included in the record.

On March 4, 2005, the Mission filed a Notice of Removal to this Court under 28 U.S.C. §§ 1330, 1332, 1441, 1446 and Rule 81(c) of the Federal Rules of Civil Procedure (Not. of Removal, Robert Van Lierop, Att'y for Def.), and, on April 11, 2005, the Mission filed the instant motion to dismiss.

## II. IMPROPER SERVICE

The Mission argues this Court lacks personal jurisdiction. To ascertain whether personal jurisdiction exists, the Court must determine whether (1) the Mission is entitled to immunity under the Foreign Sovereign Immunities Act (herein "FSIA"). 28 U.S.C. § 1608. If the Mission is not immune from the lawsuit, the Court must then decide (2) whether the Mission is a "foreign state" or an "agency or instrumentality of a foreign state" for the purpose of proper service of the Summons and Complaint. Depending on the status of the Mission, the Court must finally determine if Lewis properly effectuated service pursuant to § 1608 of the FSIA. The plaintiff has the burden to demonstrate proper service on the defendant. Hutchinson v. N.Y. State Corr. Officers, No. 02 Civ. 2407, 2003 WL 22056997, at *10 (S.D.N.Y. Sept. 4, 2003); Moultry v. City of Poughkeepsie, 154 F. Supp. 2d 809, 812 (S.D.N.Y. 2001); AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000). See also Sys. Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990) ("[w]hen service of process is challenged, the serving party bears the burden of proving its validity.").

### A. Foreign Sovereign Immunities Act of 1976

The FSIA affords foreign nations immunity from lawsuits in federal and state courts. See, e.g., 28 U.S.C. § 1604; see also Kato v. Ishihara, 360 F.3d 106, 109-110 (2d Cir. 2004). Designed "primarily to provide a unitary rule for determinations of sovereign immunity in American courts," Gray v. Permanent Mission of the People's Rep. of the Congo to the United Nations, 443 F. Supp. 816, 819 (S.D.N.Y. 1978), aff'd 580 F.2d 1044 (2d Cir. 1978), the FSIA

requires that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" unless a particular exception applies. Kato, 360 F.3d at 109-10 (internal quotations omitted). One such exception is where the subject matter of the action is commercial in nature. Id. at 110; see also 28 U.S.C. § 1605. In particular, a court must determine whether the action engaged in by a private party involves "trade and traffic or commerce." Kato, 360 F.3d at 111 (citing Rep. of Arg. v. Weltover, Inc., 504 U.S. 607, 614 (1992)).

The parties do not contest that the Mission is entitled to immunity in accordance with the FSIA. Gray, 443 F. Supp. at 819 ("there can be no doubt that the Congo Mission is a foreign state"). The issue is whether the aforementioned exception applies. The alleged activity, a construction contract, is undeniably commercial. See Adler v. Fed. Rep. of Nig., 219 F.3d 869, 875 (9th Cir. 2000) ("contract for services is plainly commercial in nature"). As such, the Mission is not immune from this lawsuit.

**B. Definition of the Mission for Purposes of 28 U.S.C. § 1608**

All entities covered by the FSIA must be served in accordance with the exclusive procedures for service outlined therein. See, e.g. Alberti v. Empresa Nicaraguense de la Carne, 705 F.2d 250, 253 (7th Cir. 1983); see also Fed. R. Civ. P. 4(j)(1). To determine whether service was properly effectuated pursuant to § 1608, the Court must first determine whether the Mission is a "foreign state," such that § 1608(a) applies, or, conversely, whether the Mission is an "agency or instrumentality of a foreign state," such that § 1608(b) applies. See 28 U.S.C. §§ 1608(a), (b).

It is well settled that a country's permanent mission to the United Nations is a foreign state for the purposes of § 1608. Gray, 443 F. Supp. at 820.[2] As such, the service requirements of § 1608(a) apply. Id.

**C. Service of Process Pursuant to FSIA**

Section 1608(a) provides that service is to be made as follows:

> (1) by delivery . . . in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery . . . in accordance

---

[2] Examples of foreign states include a foreign consulate, Gerritsen v. De La Madrid Hurtado, 819 F.2d 1511, 1517 (9th Cir. 1987), a foreign nation's air force, Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148 (DC Cir. 1994), and a corporation whose stock is owned by a foreign nation, Ofikuru v. Nigerian Airlines Ltd., 670 F. Supp 89, 91 (S.D.N.Y. 1987).

> with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State . . .

28 U.S.C. § 1608(a).

Courts have been unequivocal that § 1608(a) "mandate[s] strict adherence to its terms, not merely substantial compliance."[3] Finamar Investors Inc. v. Rep. of Tadjikstan, 889 F. Supp. 114, 117 (S.D.N.Y. 1995); see also Gray, 443 F. Supp. at 820; see also Magness v. Russ. Fed'n, 247 F.3d 609, 615 (5th Cir. 2001); see also BPA Int'l, Inc. v. Kingdom of Swed., 281 F. Supp. 2d 73, 84 (D.D.C. 2003). Accordingly, defective service is rarely, if ever, excused.[4] Transaero, Inc. v. La Fuerza Aerea Bol., 30 F.3d 148, 154 (D.D.C. 1994); see Gerritsen v. Consulado General de Mex., 989 F.2d 340, 345 (9th Cir. 1993) (failure to include translation of complaint into Spanish rendered service improper).

1. Special Arrangement and Applicable International Convention of Service

It is undisputed that a special arrangement did not exist between the parties which pertained to service of process. Thus, service in accordance with § 1608(a)(1) is inapplicable.

Similarly, the parties have not stipulated to the applicability of any particular international convention which may potentially govern service. See § 1608(a)(2). Since the Mission is located in the United States, the Hague Convention on Service Abroad of Judicial and Extrajudical Documents is clearly inapplicable because the judicial documents were not being

---
[3] Courts have allowed substantial compliance only in the context of § 1608(b), where a defendant is an "agency of instrumentality of a foreign state." See Magness v. Russian Fed'n, 247 F.3d 609, 615 (5th Cir. 2001); Finamar Investors Inc. v. Rep. of Tadjikstan, 889 F. Supp. 114, 117 (S.D.N.Y. 1995); Transaero, Inc. v. La Fuerza Aerea Bol., 30 F.3d 148, 154 (D.D.C. 1994).
[4] There is one example of "substantial compliance" in a § 1608(a) case, but it was limited to § 1608(a)(1) -- special arrangement between the parties -- and the mistake was merely in the address itself. Indeed, actual notice of the lawsuit was received. Marlowe v. Argentine Naval Comm'n, 604 F. Supp. 703, 707-8 (D.D.C. 1985).

transmitted abroad. Taft v. Moreau, 177 F.R.D. 201, 203 (D. Vt. 1997); see also Marschhauser v. Travelers Indem. Co., 145 F.R.D. 605, 607 (S.D. Fla. 1992). Thus, service in accordance with § 1608(a)(2) is inapplicable.

2. Section 1608(a)(3)

If no special arrangement exists and there is no applicable convention, the FSIA details specific procedures to properly serve a foreign state in the United States. See 28 U.S.C. § 1608(a)(3).

Among the specific procedures delineated in § 1608(a)(3) is the requirement that the papers be served on the Minister of Foreign Affairs of the foreign state concerned. The statute is clear that a foreign ambassador to the United States or United Nations cannot be construed as the Minister of Foreign Affairs. Alberti, 705 F.2d at 253 ("plaintiffs have argued that the Ambassador of Nicaragua can be construed as the Minister of Foreign Affairs. The legislative history of FSIA, however, makes clear that this is not a permissible construction of section 1608(a)(3)."). Rather, the FSIA designates the Minister of Foreign Affairs as the only person eligible to receive service because he is "most likely to understand American procedure." Transaero, Inc., 30 F.3d at 154.

Lewis's three attempts at service, (1) the February 14 mailing, (2) the March mailing, and (3) the April mailing, fail to strictly comply with the procedures detailed in the FSIA.

First, in the February 14 mailing, a copy of the Summons and Complaint were mailed, but failed to include a Notice of Suit. While the papers were in English, the official language of Botswana,[5] and the Summons and Complaint were properly served on the County Clerk's Office which then sent them to the Mission via "certified mailing," a manner which requires a signature upon receipt, the specific addressee at the Mission was not identified as mandated by the FSIA. In addition, Lewis failed to indicate that service was mailed to the Minister of Foreign Affairs. As such, the February 14 mailing fails to comply with § 1608(a)(3) in that it (1) did not include a copy of the Notice of Suit and (2) was not addressed to the head of the ministry on foreign affairs for Botswana.

Second, in the March mailing, a copy of all three required papers -- the Summons, Complaint, and Notice of Suit -- were mailed. However, Lewis failed to present support for certified mail as required by the FSIA. In addition, while Lewis served the County Clerk's

---

[5] See www.botswana-tourism.gov/bw/tourism/index_f.html (last visited Jul. 1, 2005).

Office, he failed to note the recipient. As such, the March mailing fails to comply with § 1608(a)(3) in that it was not (1) sent by certified mail and (2) addressed to the Minister of Foreign Affairs for Botswana.

Third, in the April mailing, a copy of the Summons, Complaint, and Notice of Suit were again delivered to the Mission. The papers were sent by certified mail. However, Lewis' third attempt was mailed by Lewis' attorney directly to Ambassador Dube. As such, the April mailing fails to comply with § 1608(a)(3) in that it was not (1) dispatched by the clerk of the court and (2) addressed to the Minister of Foreign Affairs for Botswana.

Lewis, while making a valiant effort, failed to strictly comply with subsection (3) on any of the three service dates and accordingly, service was not properly effectuated pursuant to § 1608(a)(3).

3. Section 1608(a)(4)

After service has been attempted under subsection (3) and 30 days have passed, a party may effectuate service pursuant to the terms of § 1608(a)(4). McCarthy ex rel Estate of Anderson v. Rep. of Cuba, 354 F. Supp. 2d 1347, 1348 (S.D. Fla. 2005). Service cannot be made pursuant to § 1608(a)(4) if it can be made pursuant §§ 1608(a)(1), (2), or (3). See Trans Commodities, Inc. v. Kazakstan Trading House, No 96 Civ. 9782, 1997 WL 811474, at *4 (S.D.N.Y. May 28, 1997). Lewis does not contend that he effectuated service pursuant to § 1608(a)(4).

4. The Dismissal for Improper Service

It is well established that the FSIA requires strict compliance. As the Mission argued, the FSIA is a reciprocal statute and the United States would expect no less were the facts reversed. As such, while the motion to dismiss must be granted, case law supports the proposition that the Court can dismiss the Complaint without prejudice, but with the caveat that the matter may be reinstated upon proper service within a reasonable period of time.[6] This approach, which I adopt here, serves several purposes and is in concert, at least philosophically, with the Federal Rules. First, it saves the Court and the Plaintiff time. Second, it aids in trying cases on their merits. Finally, it is, in a very real sense, in the interests of justice.

---

[6] Koeppel & Koeppel v. Fed. Rep. of Nigeria, 704 F. Supp. 521, 521 n.1 (S.D.N.Y. 1989) (Leval, J.) (citing to Koeppel & Koeppel v. Fed. Rep. of Nigeria, 88 Civ. 1099(PNL)) ("After finding that service had been made improperly, I dismissed the complaint with leave to reserve the defendants.").

### III. FAILURE TO STATE A CLAIM

The Mission's references to Rule 12(b)(6) in the affirmation in support of its motion to dismiss fail to include a single argument or contention that would support dismissal. Such a motion to be granted must show "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004). The Mission has failed to meet this heavy burden and that arm of this omnibus motion must be DENIED.

### IV. CONCLUSION

The motion to dismiss for improper service is GRANTED. The Complaint is DISMISSED without prejudice UNLESS Plaintiff properly serves the Mission within 60 days from the date hereof. The Mission's Rule 12(b)(6) motion is DENIED. The Clerk of Court is instructed to CLOSE this motion and REMOVE it from my docket.

**IT IS SO ORDERED.**
New York, New York
July    , 2005

_____
U.S.D.J.